UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

LARRY D. RAPER,

        Plaintiff,                Case No. 1:17-cv-368

v.                                               Honorable Paul L. Maloney

JOSEPH V. COTRONEO et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections and Cotroneo. The Court will serve the complaint against Defendants Larson and Whiteman.

**Discussion**

I. Factual allegations

Plaintiff Larry D. Raper presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Boyer Road Correctional Facility in Carson City, Michigan, which has been consolidated with the Carson City Correctional Facility (DRF) and is now referred to as DRF-West. The actions about which he complains also occurred while he was housed at the Duane Waters Hospital (DWH), operated by the MDOC. He sues the following Defendants: the MDOC; Dr. Joseph V. Cotroneo, who is a surgeon at the McLaren Hospital of Greater Lansing; DWH Doctors Lynn M. Larson and Terence Whiteman; and other unknown medical staff at DWH (Unknown Part(y)(ies)).

Plaintiff complains that, for over 15 years, doctors within the MDOC had been aware of his problems with the circulation in his legs. He broadly alleges that unnamed persons disregarded the problems for years.

On April 27, 2015, Dr. Cotroneo performed surgery at McLaren Hospital, placing a graft in Plaintiff's right groin to improve blood flow to Plaintiff's legs. The surgery had a number of complications, including a blood clot that moved toward Plaintiff's heart and ultimately caused a heart attack. Plaintiff alleges that the blood clot undoubtedly was the result of medications that he had been prescribed for years, of which Dr. Cotroneo should have known.

Plaintiff was transferred to DWH on May 4, 2015, where he was placed under the care of Dr. Rashed Bashir, who is not a Defendant in the action. Plaintiff was discharged from DWH and returned to DRF-West on May 13 or 14, 2015. Over the next two weeks, Plaintiff contracted MRSA, either in his cell or in the health care center at DWH-West. Plaintiff was readmitted at McLaren Hospital

on May 31, 2015, and again placed under the care of Defendant Dr. Cotroneo. On June 2, 2015, Dr. Cotroneo operated to clean out the infected area. Dr. Cotroneo debrided the wound abcess and excised parts of the muscle areas to remove the pus and necrotic tissue. Dr. Cotroneo, however, did not remove the graft that was placed in April. Plaintiff alleges that Defendant Cotroneo should have known that the graft needed to be removed at that time.

Plaintiff was transferred to DWH and placed under the care of Defendant Dr. Larson from about June 15, 2015 to approximately August 3 or 4, 2015. Plaintiff claims that Dr. Larson visited him only 10 to 18 times during this period. He also alleges that, in an attempt to save money, Defendant Larson used a different kind of dressing and packed the wound, rather than using the type of dressing ordered by Dr. Cotroneo. Plaintiff began to bleed from his wound at about 8:30 p.m. on August 3 or 4, 2015. After he was cleaned up, the nurses were instructed to check on Plaintiff every hour, to ensure that he had not started to bleed again. Plaintiff alleges that he did not receive the necessary care and that Defendant Larson ignored signs of infection. Plaintiff was scheduled to be discharged from DWH on August 6, 2015.

On August 6, 2015, Plaintiff suddenly began to bleed profusely from a ruptured artery. He was rushed by ambulance to the Allegiance Health emergency room. Defendant Dr. Whiteman directed care during the transfer, and he had to place 80 pounds of weight on Plaintiff's groin area to control the bleeding. At Allegiance Health, Plaintiff was placed in the care of Dr. Praveen Balraj (not a Defendant), who performed surgery to remove the graft and the infection growing under the skin. However, because of the absence of sufficient blood flow, Dr. Balraj was forced to amputate Plaintiff's right leg below the knee.

Since the amputation, Plaintiff continues to experience problems. Unspecified persons have not adequately provided assistance with his prosthetic device and have denied pain relief. In addition, since arriving back at DRF-West, Dr. Scott Holmes (not a Defendant) has denied him an air mattress, despite the fact that Plaintiff was prescribed an air mattress at DWH. Plaintiff also is being denied a pillow to place under his stub and between his legs during sleep.

Plaintiff argues that Defendant Cotroneo should have removed the graft during the June 2, 2015, surgery and that Cotroneo therefore is responsible for Plaintiff's ultimate loss of his leg. He also asserts that the DWH and DRF-West Defendants should have known of his infection sooner, before it caused him to lose his right lower leg. Plaintiff further argues that Defendants DWH and DRF-West do not adequately clean their facilities and do not use bleach in those cleanings, leading to Plaintiff becoming infected with the MRSA virus. In addition, he contends that Defendant Larson caused his infection by not checking on him more frequently and by using an improper form of dressing.

For relief, Plaintiff seeks compensatory damages in the amount of $750,000.00 and punitive damages of $850,000.00 from the individual Defendants and $5 million from the MDOC.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must

determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

        A.        Sovereign Immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit

under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

### B. Dr. Joseph Cotroneo

Plaintiff alleges that Dr. Cotroneo, a private surgeon who performed two operations at McLaren Hospital of Greater Lansing, provided care that was so inadequate as to demonstrate deliberate indifference to Plaintiff's serious medical needs.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The standard for determining whether a doctor treating a prisoner acted under color of state law for purposes of a § 1983 claim focuses on "the relationship among the State, the physician and the prisoner." *Scott v. Ambani*, 577 F.3d 642, 649 (6th Cir. 2009) (quoting *West v. Atkins*, 487 U.S. 42, 55–56 (1988)).

> Courts employ three tests to determine whether the challenged conduct is fairly attributable to the state: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test. The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state. Finally, under the symbiotic relationship test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.

*Collyer v. Darling*, 98 F.3d 211, 232 (6th Cir. 1996) (citing, *inter alia*, *Lugar v. Edmonson Oil Co.*, 957 U.S. 922, 937 (1982)). Thus, "[i]n determining whether a doctor acted under color of state law, the primary factor is 'the physician's function within the state system, not the precise terms of his employment.'" *Scott*, 577 F.3d at 649 (quoting *West*, 487 U.S. at 56.)

Plaintiff does not allege that Dr. Cotroneo was a prison official, that he was an MDOC employee, or that he served any function in the state prison system. The only allegations against Cotroneo that Plaintiff raises or suggests are that Cotroneo was employed as a surgeon at McLaren Hospital and that Plaintiff would not have lost his right leg if Dr. Cotroneo had not performed the first surgery, had not performed it poorly, or had elected to remove the graft during the second surgery. Plaintiff's claims strictly involve medical treatment provided by an off-premises, private doctor. The fact that Defendant Cotroneo may have been paid from public resources does not render him a state actor for purposes of § 1983. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (nonprofit, privately operated school's receipt of public funds did not make its employee discharge decisions acts of state subject to suit under federal statute governing civil action for deprivation of rights); *Adams v. Vandemark*, 855 F.2d 312, 315-16 (6th Cir. 1988) (fact that nonprofit corporation was funded almost entirely by public sources, and was subject to

state regulation, without more, is insufficient to make private entity's decision to discharge employees attributable to state for purpose of § 1983 action). Moreover, the fact that Dr. Cotroneo may have been subject to state licensing requirements does not make him a state actor. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (allegation that hospital and social worker were subject to state licensing was insufficient to support finding that defendants were acting under color of state law). Further, Plaintiff makes no allegation that Dr. Cotroneo was exercising powers particularly reserved to the state. *See, e.g., Ketola v. Clearwater*, No. 1:08–cv–31, 2008 WL 4820499 at *2–3 (W.D. Mich. Oct. 31, 2008) (holding that, even if the defendant hospital and its physician "treated [the prisoner plaintiff] at the state's request and expense, they did not thereby become state actors"); *Rudy v. Village of Sparta*, 990 F. Supp. 924, 930-31 (W.D. Mich. 1996) (holding that private physicians cannot be liable under section 1983 for ordering emergency medical procedures based upon their independent medical judgments). Similarly, there is no allegation that Dr. Cotroneo was compelled to work for the state or that a symbiotic relationship existed between the state and the doctor. *Collyer*, 98 F.3d at 232. Instead, Plaintiff alleges only that Dr. Cotroneo was a surgeon at McLaren Hospital, who provided Plaintiff with an operation to relieve his circulation problems and later to treat a wound infection. Given these allegations, the doctor cannot be considered a state actor for purposes of liability under § 1983. The Court therefore will dismiss Plaintiff's § 1983 claims against Dr. Cotroneo.

Plaintiff arguably may also have intended to file a medical malpractice action under state law. Plaintiff, however, has not complied with the state-law requirements for filing a medical malpractice action. Specifically, he does not allege that he sent to Defendant Cotroneo a notice of intent to file a lawsuit at least 182 days before filing suit. *See* MICH. COMP. LAWS § 600.2912b(1). Similarly, Plaintiff did not

"file with the complaint an affidavit of merit signed by a health professional who . . . meets the requirements fo an expert witness under [state law]." MICH. COMP. LAWS § 600.2912d(1). The Court therefore will dismiss Plaintiff's state-law claim of medical malpractice for failure to state a claim.

      C.   Defendants Larson & Whiteman

Upon initial review, the Court concludes that Plaintiff's allegations warrant service of his complaint on Defendants Larson and Whiteman.[1]

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Michigan Department of Corrections and Cotroneo will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Larson and Whiteman.

An Order consistent with this Opinion will be entered.


Dated: September 21, 2017       /s/ Paul L. Maloney
                    Paul L. Maloney
                    United States District Judge

---

[1] The Court lacks sufficient information at this juncture to order service of the complaint on Defendant Unknown Part(y)(ies).