UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LARRY RAPER, SR.,<br>　　　Plaintiff,<br>v.<br>JOSEPH CONTRONEO, ET AL.,<br>　　　Defendants. | No. 1:17-CV-368<br><br>HONORABLE PAUL L. MALONEY |

# ORDER

This is a civil rights action brought by a *pro se* state prisoner under 42 U.S.C. § 1983. Plaintiff Larry Raper alleges that Defendants Lynn Larson, D.O. and Terrance Whiteman, M.D. were deliberately indifferent to his serious medical needs while he was housed at Duane Waters Hospital (DWH), a medical facility operated by the Michigan Department of Corrections (MDOC).

Defendants Larson and Whiteman have moved for summary judgment based solely on Plaintiff's alleged failure to exhaust his administrative remedies. The magistrate judge issued an R & R on May 14, 2018, concluding that Plaintiff had exhausted his administrative remedies because the Defendants waived any procedural defect by addressing the merits of the grievance at earlier steps, before the defect was raised. The matter is now before the Court on the Defendants' concise objections to the R & R.

The magistrate judge concluded that Plaintiff had filed two grievances relating to his claim: DRF-1608-2074-12D ("2074") and DRF-1702-0333-28A ("333").

Grievance 2074 recounted Plaintiff's experience this way:

> This grievance is dealing mainly with Duane Waters Hospital there in Jackson, and their over all [sic] negligence in my treatment of my right leg, mainly Doctor Larson. As on Wednesday Night I was bleeding in my right leg. Now how on earth could they be so grouse [sic] of a negligence on behalf of Doctor Larson. As I was scheduled to be released on Thursday or Friday, just one or two days before I almost bleed to death. I was within one hour of getting on a van to come back here to this Carson City Facility. Now if that any one can explain to me just how over all incompetent Doctor Larson, but then trickling all the way down to the entire medical staff there at Duane Waters Medical Facility. As I am quite sure none of the ones that work there would want to have one of their loved ones subject to that kind of treatment, having to loose [sic] their leg.

(ECF No. 22-1 at PageID.134.)

MDOC then issued a Step I response to Grievance 2074. (*Id.* at PageID.135.) It summarized Plaintiff's relevant medical history including his surgery on March 6, 2015, second surgery on April 27, 2015, and post-surgery treatment from May 31, 2016 and continuing over the summer. (*Id.*) It noted that on August 5, 2016, Plaintiff suffered a related medical issue when the surgical site ruptured resulting in further medical treatment and the amputation of Plaintiff's leg below the knee. (*Id.*) MDOC's Step I response concluded by noting, "Upon review of [the medical history], no evidence to support the grievant's claim of negligence is found. With any surgery there are many possible complications. Grievance denied. The grievant is encouraged to re-access health care as needed." (*Id.*)

Plaintiff then escalated the grievance to a Step II appeal. MDOC responded similarly: "Grievant's electronic medical record was reviewed. Documentation revealed grievant was provided timely and appropriate care for his medical condition." (*Id.* at PageID.133.) In the conclusion section, the Step II appeal indicated: Evidence[:] Policy 03.04.100 Health Care Services. Grievance: Denied. (*Id.*)

Plaintiff then escalated Grievance 2074 to Step III. For the first time, MDOC rejected the grievance because there was "no indication the grievant attempted to resolve this issue prior to filing [Grievance 2074] as outlined in policy [PD 03.02.130]." (*Id.* at PageID.131.)

The magistrate judge concluded that because MDOC had considered the merits of grievance at Step I and Step II without any reference to a procedural defect, the Defendants had waived the defect noted at Step III. The magistrate judge's conclusion was premised on *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). There, the Sixth Circuit explained, "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Id.*

The magistrate judge further concluded that Plaintiff had exhausted a claim against Dr. Whiteman because Grievance 333, which contained a claim against Whiteman, was rejected as duplicative by MDOC. The magistrate judge reasoned that if Grievance 333 was truly duplicative of Grievance 2074, then Dr. Whiteman had fair notice of the alleged mistreatment that led to Plaintiff's claim despite Plaintiff not identifying him by name.

The Defendants now object that the Report and Recommendation does not address *Cook v. Caruso,* an unpublished Sixth Circuit opinion. 531 F. App'x 554, 563 (6th Cir. 2013).[1]

---

[1] The Defendants do not challenge the magistrate judge's conclusion that Dr. Whiteman had fair notice of the claim against him through Grievance 2074. Accordingly, if the MDOC waived the procedural defect in Grievance 2074, Plaintiffs claims against Whiteman will also survive.

3

In *Cook,* the MDOC denied the plaintiff a bottom bunk even though he had a special medical accommodation as a precaution for his epilepsy. *Id.* at 556. He suffered a seizure, fell out of his top bunk, and injured himself. *Id.*

He filed a grievance charging that he received inadequate medical care after his fall. One year later, he filed a second grievance raising the denial of a bottom bunk. *Id.* at 557. At each stage of the grievance process, MDOC officials rejected the second grievance as untimely, but in steps II and III, they also recounted the basis for the prisoner's injury and noted the medical treatment he had received. *Id.* at 557–58. The district court granted the defendants' motion for summary judgment on the basis of exhaustion. *Id.* at 558. The prisoner then appealed, arguing that MDOC had waived his procedural defenses.

The Sixth Circuit affirmed. The court distinguished *Reed-Bey* by noting that although MDOC had reviewed the facts at each step, it had not actually decided on the merits, so that from Step I to Step III, MDOC had relied on procedural defects to reject the grievance. *See id.* at 563 ("Simply mentioning that the prison reviewed the record does not a merits-based response make."). The court clarified *Reed-Bey,* asserting that a merits-based determination must be made at *each* step of the grievance process for a prisoner to claim that the prison had waived a procedural defect. *Id.* at 563 ("For *Reed–Bey's* holding to apply, Cook would have had to receive merits-based responses at *each* step."). Thus, the Court affirmed the district court's grant of summary judgment on the basis of exhaustion.

Now, the Defendants assert that because Plaintiff did not receive a merits-based determination at Step III, he failed to exhaust his claims properly under *Cook.*

4

The Court does not agree. The crucial difference between *Cook* and the instant case is that here, Defendants did not assert a procedural defect in either Steps I or II, and it went far beyond "review[] of the record" in those steps by denying the grievance on the merits. It raised Plaintiff's procedural defect—failing to attempt to resolve the issue before filing a grievance—only at Step III.[2]

The Court concludes that where prison officials do not assert a procedural default at Steps I and II of the grievance process, instead addressing the claims on the merits, *Cook* is inapplicable. *Reed-Bey* instructs that "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." 603 F.3d at 325.

Neither *Cook* nor *Reed-Bey* directly addresses situations in which MDOC officials assert a procedural defect for the first time late in the grievance process. The Court concludes that when MDOC officials shift their rationale in denying a grievance from a purely merit-based determination to a procedural defect at the final step in the grievance process, the defect has been waived, thus exhausting the claim for purposes of federal suit. *See, e.g.,*

---

[2] The Court is unsure how Plaintiff could have resolved his issue—that medical negligence by DWH employees caused his leg to be amputated—by informally raising it with the Dr. Larson.

Further, there is no evidence that Plaintiff had access to Dr. Larson at any point after the August 5 medical emergency and amputation, which is when the grievance arose. It would appear to the Court that under MDOC policy, Plaintiff was prevented from raising the issue with Dr. Larson by circumstances beyond his control. (*See* PD03.02.130(G)(2).) While not a model of clarity, Plaintiff seemed to suggest as much in Grievance 333 which stated, "There was no way in which I could take, and resolve this grievance [] as I was in the Duane Waters Medical Center. Also I did not have any of the medical record files . . . ." (ECF No. 22-1 at PageID.127.)

5

*Alexander v.* Huss, No. 2:16-cv-209, 2017 WL 4119944 (W.D. Mich. Sept. 18, 2017) (Maloney, J.) ("When the MDOC opts to ignore procedural violations, and instead addresses the merits of the claim or the appeal, it cannot later raise the procedural defect as a defense.") (citing *Reed-Bey*). Thus, Defendants waived their right to enforce the procedural defect when it was not asserted in either the Step I or Step II response to Plaintiff's grievance. It would be vastly unfair to allow MDOC to shift to a purely procedural rationale to deny a grievance and thus deprive the grievant of access to the courts under such a circumstance.

Accordingly, Defendants' objection (ECF No. 46) that the magistrate judge did not consider *Cook* is **OVERRULED.**

**IT IS ORDERED** that the May 14, 2018 R & R (ECF No. 45) is **MODIFIED TO INCORPORATE** the Court's discussion of *Cook and Reed-Bey*, but otherwise **ADOPTED** as the Opinion of the Court.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (ECF No. 22) is **DENIED.**

Date: June 12, 2018  /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge